Friedman and Catterson, JJ., dissent in a memorandum by Catterson, J., as follows: I must respectfully dissent. In my view, the totality of the circumstances justified not only a De Bour level two common-law inquiry, but also provided the police with reasonable suspicion to believe that the appellant was illegally carrying a gun in his backpack justifying a level three stop and frisk.
Relying on People v Fernandez (87 AD3d 474 [1st Dept 2011]), the majority acknowledges that the appellant’s “furtive behavior at night and in a high-crime neighborhood” justified a level two inquiry. However, because the object that the appellant secreted in his backpack “bore no obvious hallmarks of a weapon” and there were no other “indicia of criminality,” the majority concludes that there was no justification for a level three stop and frisk. I disagree. It is not necessary for an officer to see the “outline of a gun” in order to form a reasonable suspicion that the defendant is armed. A defendant’s “describable conduct” may provide a “reasonable basis for the police officer’s belief that the defendant [has] a gun in his possession.” (People v Marine, 142 AD2d 368, 371-372 [1st Dept 1989] [internal quotation marks and citation omitted].)
In any event, Fernandez is inapposite. In Fernandez, the officer saw the defendant in a high-crime area, crouched behind an SUV holding his hand “near” his waist, but never saw the defendant take anything out of his waistband, nor saw what the defendant was holding. We found that the mere fact that an officer sees a person holding something near his waistband is not enough to form a reasonable suspicion “absent any indication of a weapon, such as the visible outline of a gun.” (87 AD3d at 476.)
By contrast, in this case the officer saw the appellant take a white object large enough to be a gun out of his waistband and *410 put it in his backpack. The officer testified that he thought the object could have been a gun not only because it was in his waistband, but also because the appellant handled the object “with care.” (See e.g. People v Alozo, 180 AD2d 584, 586 [1st Dept 1992], citing People v Benjamin, 51 NY2d 267, 271 [1980].) In People v Alozo, we found that the object’s “appearance, the manner in which defendant held it and the fact that it was inserted in the back waistband of his pants” (180 AD2d at 586 [emphasis added]) provided a reasonable basis for the officer to believe that the defendant had a gun. We further observed that “ ‘[i]t is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband.’ ” (Id., quoting People v Benjamin, 51 NY2d at 271.) The officer in this case also testified that the backpack appeared to be empty, but sagged from a heavy weight at the bottom, heightening his suspicion that the object was a gun. (See e.g. Matter of Wilberto R., 220 AD2d 332, 332-333 [1st Dept 1995] [defendant’s vest pocket drooped, “indicating a heavy object that the officer believed could have been a gun”].)
Moreover, contrary to the majority’s finding, in my opinion there were other “indicia of criminality.” The appellant’s efforts to keep the object concealed, his surreptitious conduct looking up and down the street, and his presence alone at night in a drug-prone location where armed robberies were increasing, were all factors that aroused the officer’s reasonable suspicion. (See e.g. People v Martin, 88 AD3d 473 [1st Dept 2011] [the drug-prone location of the transaction contributed to the trained officer’s suspicion]; People v Flores, 226 AD2d 181 [1st Dept 1996], lv denied 88 NY2d 985 [1996] [defendant’s effort to conceal a bulge in his waistband escalated the encounter to reasonable suspicion]; People v Alozo, 180 AD2d at 586 [“(t)he officer’s suspicions were further aroused” when the defendant looked “up and down the block both before and after retrieving the object”].)
While it may be true, as the majority finds, that individually these circumstances were “susceptible of an innocent interpretation,” here, they have to be viewed as a progression of actions, with each circumstance increasing the level of the police officer’s suspicion. Thus, I would find that taken together, they provided the officer with reasonable suspicion that the appellant was illegally carrying a gun in his backpack. In People v Rodriguez (71 AD3d 436 [1st Dept 2010], lv denied 15 NY3d 756 [2010]), we concluded that although “[e]ach of the[ ] circumstances, when viewed in isolation, might be considered in *411 nocuous,” when viewed “in totality,” they provided reasonable suspicion that justified a stop and frisk. (71 AD3d at 436-437 [defendant behaved “stealthily” in an area known as a “distribution point for drugs and firearms,” his waistband was “weighed down” by an object that he attempted to conceal, and he was carrying a latex glove].)
Furthermore, the officer testified that he knew that the appellant was lying when he repeatedly said that there was “nothing” in the backpack because he saw him put the object there and could see the weight of it at the bottom. Thus, in my opinion, because the police already had reasonable suspicion to believe that the appellant illegally possessed a gun, his prevarication increased the officer’s level of suspicion to probable cause to believe that there was a weapon in the backpack, justifying the search. (See e.g. People v Febus, 11 AD3d 554, 556 [2d Dept 2004], lv dismissed 4 NY3d 743 [2004] [because the officer had reasonable suspicion to stop the defendant, the defendant’s lie that he had “nothing” in his pocket raised the level of the encounter to probable cause]; People v Scott-Heron, 11 AD3d 364 [1st Dept 2004], lv denied 4 NY3d 803 [2005] [“defendant’s patently false responses to the detective’s initial questions clearly raised the level of suspicion to probable cause”].)
In any event, I disagree with the majority that the invitation to search limited the search to the main compartment of the appellant’s backpack. As the majority acknowledges, the appellant explicitly suggested that the officer look inside the backpack for papers that might contain identifying information. When the officer did not find any papers in the main compartment with the appellant’s name on them, he opened the outer pocket. I do not believe that the right to proceed to the outer pocket was “lost” when the officer failed to find papers in the main compartment. The scope of a search is “generally defined by its expressed object” and the “reasonable” expectation of the person consenting to the search. (People v Gomez, 5 NY3d 416, 420 [2005] [internal quotation marks and citation omitted].) Here, the appellant did not expressly limit the search to the main compartment, nor could he have reasonably expected it to be limited to that area since a school paper with a student’s name on it could be located in any pocket of a student’s backpack, not just the main compartment.